UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WILLIAM B. BURFORD PRINTING )<br>COMPANY, INC., )<br>W.D.H. ENTERPRISES, INC. )<br>   d/b/a THE FURNITURE MART, )<br>)<br>Defendants. )<br>_____)<br>)<br>WILLIAM B. BURFORD PRINTING )<br>COMPANY, INC., )<br>)<br>Counter-Claimants, )<br>)<br>v. )<br>)<br>WESTFIELD INSURANCE COMPANY, )<br>)<br>Counter-Defendants. ) | No. 1:18-cv-03685-SEB-MJD |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Now before the Court is Defendant/Counter-Claimant William B. Burford Printing Company's ("Burford Printing") Motion for Partial Summary Judgment, as well as Plaintiff/Counter-Defendant Westfield Insurance Company's ("Westfield") Cross-Motion for Summary Judgment. For the reasons set forth herein, Burford Printing's Motion for Summary Judgment is DENIED, and Westfield's Cross-Motion is GRANTED.

**Background**

**I.     Procedural Background**

This matter involves an insurance coverage dispute arising out of a lawsuit filed by Defendant WDH Enterprises, Inc. d/b/a The Office Furniture Mart ("OFM") against Defendant Burford Printing to recover costs incurred by OFM resulting from environmental contamination on OFM's property, which it purchased from Burford Printing. Plaintiff Westfield initiated this declaratory judgment action in our Court on November 26, 2018, basing jurisdiction on 28 U.S.C. § 1332. Westfield seeks a declaration that it has no duty to defend Burford Printing in the proceedings currently pending in Marion Superior Court (Indiana) nor a duty to indemnify Burford Printing. On April 9, 2019, Burford Printing filed its counterclaim, alleging that Westfield had committed a breach of contract by denying coverage and declining to defend Burford in the state court litigation.[1]

**II.    Factual Background**

The following facts are undisputed unless specifically noted.

On May 17, 1995, Burford Printing agreed to sell the property located at 3448 Shelby Street, Indianapolis, Indiana (the "Property") to Wesley Hawk, the owner of OFM. [Dkt. 71, at 2; Dkt. 77, at 6]. On July 13, 1995, Burford Printing and Mr. Hawk closed the sale of the property. [*Id.*]. Title was transferred to Mr. Hawk by virtue of a

---

[1] OFM has been joined in this action by virtue of its interest in the resolution of the duty to indemnify issue. [Compl. ¶ 4.3]. OFM has objected to Burford Printing's request for summary judgment and endorsed the position of Westfield. [Dkt. 78].

corporate warranty deed. [*Id.*]. Burford Printing agreed to finance the sale of the Property, and Mr. Hawk executed an installment promissory note evidencing the loan, which was secured by a mortgage executed by Mr. Hawk in favor of Burford Printing as the mortgagee. The parties agree that Burford Printing was thus the mortgage holder on the property as of July 13, 1995. [*Id.*]. Importantly, and a fact about which there is no dispute, Burford Printing never leased the property to Mr. Hawk.[2] [Dkt. 70, at 2; Dkt. 77, at 12-14, 23; Dkt. 79, at 1].

That same day, July 13, 1995, Westfield issued a Commercial Package Policy, Policy No. CWP 3 697 388 (the "Policy"), to Mr. Hawk to provide insurance coverage on the Property, effective July 13, 1995 through July 13, 1996. On July 13, 1996, the Policy was renewed for an additional year (the "Renewal"). [Dkt. 71, at 2; Dkt. 77, at 7]. The Policy and Renewal are collectively referred to here as the "Policies" unless context requires otherwise. On the Declarations page of the Policies, Mr. Hawk is listed as the "Named Insured." [Dkt. 1-3, at 11; Dkt. 1-4, at 8].

The Policies consist of two coverage parts, a Commercial Property ("CP") Coverage Part and a Commercial General Liability ("CGL") Coverage Part as well as numerous forms and endorsements. [Dkt. 77, at 4]. At issue here is the CGL Coverage Part, which, in sum, imposes a duty upon Westfield to defend the "insured" against any lawsuit seeking damages to which the insurance may apply and to indemnify the

---

[2] Burford Printing's Counterclaim pled that it was a lessor of the Property, and, importantly, that its status as a lessor entitled it to coverage under the insurance policies at issue. [Dkt. 40, at ¶¶ 13, 18, 20-22]. Burford Printing has abandoned this argument at summary judgment.

"insured" for "any sums that [it] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Policies] apply." [Dkt. 1-3, at 53; Dkt. 1-4, at 50]. Section II of the Policies, entitled "WHO IS AN INSURED," provides that the term "insured" includes any individual listed as the named insured in the Declarations (i.e., Mr. Hawk), and various other categories of individuals (such as Mr. Hawk's employees or legal representatives), none of whom are applicable here or to Burford Printing. [Dkt. 1-3, at 57-58; Dkt 1-4, at 54-55; Dkt. 77, at 9-10].

The parties agree that Mr. Hawk paid a premium to include in addition to himself personally Burford Printing as an additional insured on the Policies, though they dispute the extent of coverage that was afforded to Burford Printing as an additional insured. The uncontested evidence nonetheless establishes that the Declarations page of the CGL Coverage Part displays as follows the General Liability Schedule of Coverage (the "Schedule"):

**GENERAL LIABILITY SCHEDULE**

PREMIUM BASIS LEGEND –
S = GROSS     PER $1,000   A = AREA PER 1,000 SQ. FT.    U = UNITS PER UNIT
    SALES     PER $1,000   C = TOTAL COST PER $1,000     T = SEE CLASSIFICATION
P = PAYROLL PER $1,000   M = ADMISSION PER $1,000

RATE LEGEND –
PREM/OP = PREMISES AND OPERATIONS
PROD = PRODUCTS AND COMPLETED OPERATIONS

| CLASIFICATION | CODE | PREMIUM BASIS | RATE | PREMIUM |
|---|---|---|---|---|
| INDIANA | | | | |
| 3448 SHELBY ST. | | | | |
| INDIANAPOLIS IN 46204 | | | | |
| PRODUCTS/COMPLETED OPS (NOC) [ . . . ] | | | | |
| **WAREHOUSES - MANUFACTURING OR PRIVATE BUILDINGS OR PREMISES - OCCUPPIED BY MULTIPLE INTERESTS (LESSOR'S RISK ONLY) - INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS.** | 68702 45,000 | A   PREM/OP | 22.272 | $1,002 |
| ADDITIONAL INSD BLDG OWNER WM B BURFORD PRINTING CO FORM CG2011 | | PREM/OP | | $100 |

[. . .]

| | | |
|---|---|---|
| TOTAL PREMIUM – PREMISES AND OPERATIONS | | $1,002 |
| **TOTAL PREMIUM – ADDITIONAL INSURED BLDG OWNER** | | **$100** |

[ . . . ]

[Dkt. 1-3, at 47; Dkt. 1-4, at 44]. (*emphasis added*). Immediately following the

Schedule, the final page of Declarations reads:

**ADDITIONAL INSUREDS**
WILLIAM B BURFORD PRINT CO
AND WILLIAM B BURFORD
7350 S 775 E
ZIONSVILLE IN 46077
    ADDITIONAL INSURED BLDG OWNER

[Dkt. 1-3, at 48; Dkt. 1-4, at 45]. As we will discuss more fully in our subsequent legal analysis, Westfield, relying on the Schedule, argues that Mr. Hawk paid a premium to add Burford Printing as an additional insured but only with respect to particular coverage, that is, the coverage included in the form identified on the Schedule—Form CG 2011. Form CG 2011 is an additional insured endorsement that operates as a modification to the CGL Coverage and provides in relevant part:

**ADDITIONAL INSURED – MANANGERS OR LESSORS OF PREMISES**

[ . . . ]

**COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

1. Designation of Premises (Part Leased to You):

2. Name of Person or Organization (Additional Insured):

3. Additional Premiums

(If no entry appears above, the information required to complete this endorsement will be shown in the declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule *but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [Mr. Hawk] and shown in the Schedule* and subject to the following exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after [Mr. Hawk] cease[s] to be a tenant in that premises.

2. [ . . . ]

[Dkt. 1-3, at 51; Dkt. 1-4, at 48]. (*emphasis added*).

Pursuant to this endorsement, Westfield argues that Burford Printing is entitled to coverage as an additional insured only to the extent it faces liability arising out of its status as a manager or lessor of insured property that was leased to Mr. Hawk. Because Burford Printing never acted as a manager or lessor and because the insured property was never leased to Mr. Hawk, Westfield maintains that Burford Printing is not entitled to any coverage under the Policies as an additional insured. Burford Printing disagrees. Burford Printing acknowledges that From CG 2011 is included as an endorsement on the Policies, agrees that this endorsement provides coverage for those who lease the insured property to the named insured, and concedes that it was not a lessor of the Property. It nonetheless disputes the contention that the additional insured premium was paid for this narrow purpose and that its rights under the Policies are thus limited. Both parties have filed motions for summary judgment in their respective favor, which are now ripe for ruling.

## Discussion

### I.   Standard of Review

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We neither weigh the evidence nor evaluate the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences

flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

Courts often confront cross motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *Kohl v. Ass'n. of Trial Lawyers of Am.*, 183 F.R.D. 475 (D. Md. 1998). Here, the Court has considered the parties' respective memoranda and the exhibits attached thereto and has construed all facts and drawn all reasonable inferences therefrom in the light most favorable to the respective nonmovant. *Matsushita*, 475 U.S. at 574.

## II. Analysis

The parties have raised two issues: whether Westfield has a duty to either defend Burford Printing in the underlying litigation or indemnify it for any costs incurred from its liability. Westfield seeks summary judgment in its favor on both issues whereas Burford requests summary judgment only on the duty to defend.

### A. Westfield Has No Duty to Defend or Indemnify Burford Printing

In Indiana,[3] an insurer's duty to defend its insured is broader than its duty to indemnify. *City of Gary v. Auto-Owners Ins. Co.*, 116 N.E.3d 1116, 1121 (Ind. Ct. App. 2018). It is the nature of the claim, not its merit, that establishes an insurer's duty to defend. In determining whether an insurer has a duty to defend an insured, the court

---

[3] The parties agree that Indiana law governs this dispute.

generally must compare the underlying factual allegations of the complaint with the relevant provisions of the insurance policy. *Id.* Where there is no duty to defend, there can be no duty to indemnify. *Id.*

The issue before us here is not so much whether the facts alleged in the underlying litigation fall within the Policies' coverage as rather whether Burford Printing qualifies as an "insured" under the Policies so to avail it of the benefits therein. Westfield says Burford Printing is not an "insured" under the policy; Burford Printing says that it is. We turn to principles of contract construction to determine Burford Printing's status an additional insured.

The interpretation of an insurance policy such as the one at issue here is generally a question of law appropriate for summary judgment. *Liberty Mut. Ins. Co. v. Michigan Mut. Ins. Co.*, 891 N.E.2d 99, 101 (Ind. Ct. App. 2008*); Amerisure Ins. Co. v. Scottsdale Ins. Co.*, 795 F. Supp. 2d 819, 823 (S.D. Ind. 2011), aff'd sub nom. *Amerisure Ins. Co. v. Nat'l Sur. Corp.*, 695 F.3d 632 (7th Cir. 2012) ("It has long been held that the proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment.") (internal quotations omitted). When interpreting an insurance policy, "we give plain and ordinary meaning to language that is clear and unambiguous." *United Farm Family Mut. Ins. Co. v. Matheny*, 114 N.E.3d 880, 885 (Ind. Ct. App. 2018), *trans. denied*, 124 N.E.3d 40 (Ind. 2019). The contract language is unambiguous if "reasonable persons could not honestly differ as to its meaning." *Id.* To that end, we look to see "if policy language is susceptible to more than one interpretation." *Id.* While a dispute between an insurer and its insured requires

that all ambiguities be resolved against the insurer, this is not the case where a party, who has not paid premiums to the insurer, seeks status as an additional insured. In such circumstances, the policy is construed from a neutral perspective.[4] *State Farm Fire & Cas. Co. v. Vidal*, No. 3:12–cv–00181–RLY–WGH, 2013 WL 5786890, at *2 (S.D. Ind. Oct. 28, 2013) (citing *Barga v. Indiana Farmers Mut. Ins. Group, Inc.*, 687 N.E.2d 575, 578 (Ind.Ct.App.1997); *see also W. Bend Mut. Ins. Co. v. MacDougall Pierce Const., Inc.*, 11 N.E.3d 531, 538 (Ind. Ct. App. 2014).

There is no dispute between the parties before us that Form CG 2011, hereinafter referred to as the "Additional Insured Endorsement," modifies the definition of an "insured" in the Policies and provides coverage for those who have leased property to the insured and whose liability arises out of their role as the lessor. There is also no dispute that the terms within this endorsement are unambiguous, as are the terms within the provision defining "who is an insured." It is further undisputed that Burford Printing is not entitled to coverage by virtue of the Additional Insured Endorsement, given the

---

[4] Burford Printing argues that we should resolve any contractual ambiguities against Westfield, but that is not the correct standard in this instance. While dicta from the Indiana Court of Appeals suggests that additional insureds should not be required to face the added hurdle of review from a neutral perspective, the prevailing approach in such circumstances continues to support a review from a neutral position. *Selective Ins. Co. of S.C. v. Erie Ins. Exch.,* 14 N.E.3d 105, 112 (Ind. Ct. App.), trans. granted, opinion vacated sub nom. S*elective Ins. Co. of S.C. v. Erie Ins. Exch., Welch & Wilson Properties*, LLC, 21 N.E.3d 838 (Ind. 2014), vacated sub nom. *Selective Ins. Co. of S.C. v. Erie Ins. Exch.*, 24 N.E.3d 958 (Ind. 2015). In any event, assuming the law requires the court to refrain from applying a neutral reading of the Policies, our analysis would be unchanged as we do not find the Policies to be ambiguous.

stipulation that it never leased the property to Mr. Hawk.[5] The parties' agreements end here.

We begin by addressing the parties' conflicting positions as to the purpose and legal effect of the premium paid by Mr. Hawk to include Burford Printing as an additional insured. Westfield vigorously contends that the Schedule establishes that Mr. Hawk's premium was paid for the specific purpose of incorporating the Additional Insured Endorsement, thereby providing Burford Printing with limited coverage consistent with those terms. Both the endorsement and its premium are plainly acknowledged on the portion of the Schedule identifying Burford Printing as an additional insured. Westfield maintains that is therefore unreasonable to interpret the Policies as providing Burford Printing with any greater coverage than that which is set forth in the Additional Insured Endorsement.

Burford Printing disagrees that the Schedule clearly establishes its rights as an insured. Rather, Burford Printing contends that the Schedule merely lays out a method of calculation of the premiums; it does not address or otherwise effect substantive rights under the contract. According to Burford Printing, the "words and numbers" on the Schedule are little more than "insurance underwriter language" that "are not understood outside of the underwriting insurance world." Accordingly, the fact that a premium

---

[5] Westfield has presented substantial argument on each of these points and Burford Printing has offered zero rebuttal. Burford Printing has conceded the validity of Westfield's arguments on these points by failing to respond. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Additionally, though its counterclaim pleads that it leased the Property to Mr. Hawk, Burford Printing has proffered no evidence or argument to substantiate that claim, instead choosing to proceed on an entirely new theory of its case at summary judgment.

amount is listed alongside the designation of its name along with the reference to "Form CG 2011" does not support a finding that the premium was paid for the narrow purpose of adding Burford Printing as an additional insured as prescribed solely in that endorsement. The deposition testimony of Westfield's claims adjuster, Dan Slayton, arguably supports Burford Printing's interpretation. Burford Printing also contends that Mr. Slayton testified that he did not know why this premium was paid, contrary to Westfield's current arguments to the Court.

Westfield counters that Burford Printing has twisted the deposition testimony to reach the conclusion that the purpose of the premium is not established by or tied to the Schedule. We share Westfield's view of Burford Printing's contorted interpretation. Burford Printing's position obviously is not supported by its proffered evidence. Specifically, Mr. Slayton clearly did not testify that the portion of the Schedule upon which Westfield relies is nothing more than underwriter mumbo-jumbo, as Burford Printing characterizes it. Further, the questions posed by defense counsel that Mr. Slayton was unable to answer because of his apparent lack of experience in the underwriting field were unrelated to the relevant portion of the Schedule, that is, the portion identifying Burford Printing as an additional insured. Consider the following colloquy:

> **Question:** Would you agree that you need to be an underwriting person to understand the numbers and language that goes into this general liability schedule on 0055?[6]

---

[6] Page 0055 is the Declarations page on which the Schedule appears.

**Answer:** Are you talking about – how far down on this page?

**Question:** Well, we've got – as we started, it says, premium basis legend. S equals gross per thousand dollars, da, da, da, da, da. Would you agree you need to be an underwriter in an insurance company to understand what is being stated in that part of the general liability schedule?

[objection]

[ . . .]

**Question:** Okay. Let's go back up to the top for the general liability schedule. Premium basis legend. Would you agree that all that language is language that's known and understood by underwriters at your company and not necessarily all claims people?

**Answer**: I – you know, I'm answering the question if I know what it means.

**Question**: Okay.

**Answer**: I can't speak on behalf of, you know –

**Question:** Underwriters?

**Answer:** I can't speak on behalf of a group of claims people or any other employees. There may be some that know (what) that means, but I'm just letting you know that, you know, S equals gross. You know, I'd have to really review and think about this and, you know, review that further.

**Question**: So you're within Westfield Insurance and you don't really have an understanding of what all that stuff about premium basis legend is, do you?

[objection]

[ . . . ]

**Question:** So what's MP equals minimum premium mean?

[. . . ]

[objection]

[ . . . ]

> **Question:** What's the difference between 4444 and 68703 in terms of Classification Indiana?

[Dkt. 79-1, at 40-46]. This apparent attempt at impeachment of the witness continued with defense counsel's question about various (seemingly irrelevant)[7] codes and terms. More than impeachment, perhaps, the purpose of the line of question was to show that the terms in the Schedule were meaningless as reflections of the rights of his client under the contract. Importantly, however, Mr. Slayton did *not* testify as Burford Printing now contends. In fact, he later testified to precisely the opposite. Nor did Mr. Slayton ever testify that he did not know why the premium was paid.[8] He explained that the Schedule reflects that the premium was paid for the specific purpose of adding the Additional Insured Endorsement and to provide coverage to Burford Printing consistent with the terms therein; this squares completely with Westfield's position in this litigation:

> **Question:** At the bottom of the general liability schedule, it says, total general liability and rating period premium. Do you see that, 1,102?
>
> **Answer**: Yes.
>
> **Question:** Okay. Is that the – is that the rating – is that the premium to be paid for this liability coverage?
>
> **Answer.** I believe so.
>
> **Question:** Okay. And so that indicates that there is a premium being paid for the second Classification Indiana, warehouses – manufacturing or private buildings or premises – occupied by multiple interests, lessor's risks only, including products

---

[7] All of Westfield's objections on this questioning were based on relevancy grounds.
[8] The portion of deposition testimony cited by Burford Printing for this proposition merely shows that Mr. Slayton did not know Mr. Hawk's reasoning in adding the Additional Insured Endorsement. Mr. Slayton, consistent with the entirety of his deposition testimony, states that one must look to the Declarations page to determine Burford Printing's coverage as an additional insured. [Dkt. 79-1, at 54].

and/or completed operations, additional building owner, William B. Burford Printing, From CG 2011. Do you see that?

**Answer:** Yes.

**Question:** Okay. So does that signify that a separate premium was paid for making William B. Burford Printing Company an additional insured under the liability portion of the policy?

**Answer:** No, because it refers to Form CG2011. So you have to go to the policy language to review to determine whether or not –

**Question:** Well, but my question was, was simply, didn't Mr. Hawk pay $100 to add this Classification Indiana to the general liability schedule of the policy?

**Answer:** He paid – it appears a premium was paid to add, you know, what starts there with warehouses, manufacturing, et cetera.

[ . . . ]

**Question:** Okay. And isn't the page 0055 the page that's just calculating the premium to be paid?

**Answer:** No.

**Question:** Well, what is – I mean, the general liability schedule has classification code, premium basis rate, premium, and it comes up with a premium. So isn't this a calculation of the total general liability rating?

**Answer:** For your question, you said something to the effect of "doesn't this just" when you asked that question, and that – that in part – but it doesn't – in its entirety, that's not the only thing it does.

[Dkt. 79-1, 47-50]. Burford Printing misrepresents this testimony in citing it as proof that the premium paid by Mr. Hawk was for something other than or in addition to the inclusion of Burford Printing in the Additional Insured Endorsement. The only reasonable inference arising from the Schedule is that Mr. Hawk paid a premium to include Burford Printing as an additional insured such that the Additional Insured

Endorsement serves as the base to which Burford Printing's coverage is pinned. This construction is further consistent with the language of the endorsement itself which states that the name of the additional insured and the complementary premium associated with the endorsement will appear in the Declarations (the broader section in which the Schedule appears).

What remains at this point is Burford Printing's argument that the appearance of its name as the "building owner" under the "additional insureds" section, stripped of any notation binding him to the Additional Insured Endorsement, entitles it to full liability coverage under the Policies. Though Burford Printing does not contend that it has any rights to coverage under the Policies based on the Additional Insured endorsement, it insists that this endorsement, in defining the rights of additional insureds who are lessors, does not include the exclusive listing of rights for all parties who were (or might have been) additional insureds. Burford Printing's argument grows out of the Policies' failure to define "additional insured," which resulted in an ambiguity fueling an expectation of full liability coverage. This ambiguity in the Policies which results from the lack of a definition of "additional insured" misleads and/or prejudices any additional insureds who are not lessors.

Westfield rejoins that the Policies cannot be fairly described as ambiguous given the undisputed clarity of the section entitled "Who is an Insured," as well as the Additional Insured Endorsement, which, according to Westfield, lays out the requirements for Burford Printing to qualify as an "additional insured."

Again, we are drawn to the logic of Westfield's arguments. Burford Printing attempts to create ambiguity where there is none, making too much out of the absence of a definition of "additional insured," when "[t]he failure to define a contractual term does not necessarily make that term ambiguous." *Selective Ins. Co. of S.C. v. Erie Ins. Exch.*, 14 N.E.3d at 112 (Ind. Ct. App.). Equally important is the fact that there is no dispute that the Policies unambiguously define "who is an insured" as well as the terms of the Additional Insured Endorsement. Given that one's status as an insured is clearly defined in the Policies and does not include Burford Printing, Burford Printing cannot expect to prevail with its interpretation. Though Burford Printing's name does appear on the final Declarations page without reference to the Additional Insured Endorsement,[9] Burford Printing's interpretation stops well short of "harmonizing the provisions of the contract as a whole." *Id.*

The premium paid by Mr. Hawk to include Burford Printing as an additional insured was clearly limited to that specifically defined purpose. Nothing contained in the Policies' provisions or supported by other designated evidence indicates otherwise. Burford Printing is not entitled to any more coverage than provided by the terms of the Additional Insured Endorsement, although we note that the prerequisites for such coverage have not been fulfilled. Burford Printing never directly paid a premium for insurance coverage but would nonetheless have us hold that it is entitled to insurance coverage equal to that of Mr. Hawk (whose premium was ten times the amount of what

---

[9] Arguably, this additional inclusion does nothing more than write in Burford Printing's full name and mailing address.

he paid to include the Additional Insured Endorsement). Burford Printing's arguments hang on a slender thread. Beyond the discussions laid out in this ruling, we find no reason to credit them further.[10]

Because Burford Printing does not qualify as an additional insured pursuant to the Policies' unambiguous terms, Westfield has no duty to defend or indemnify Burford Printing.

B. The Renewal Policy is Not Illusory

Burford's Printing's final contention is that it is entitled to coverage on the grounds that the Renewal Policy is illusory. We can dispatch with that claim in short order.

An insurance policy provides illusory coverage if the policy is "basically valueless to the insured" because the insured would "not recover benefits under any reasonably expected set of circumstances." *Nautilus Ins. Co. v. Sunset Strip, Inc.*, No. 1:14–cv–01273–MJD–WTL, 2015 WL 4545876, at *6 (S.D. Ind. July 28, 2015) (quoting *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 507 (Ind.Ct.App.1991)) . Where a policy is illusory, the court will enforce its terms to "satisfy the reasonable expectations of the insured." *Nautilus Ins. Co.*, 2015 WL 4545876, at *6  (citing *Landis v. Am. Interinsurance Exch.*, 542 N.E.2d 1351, 1354 (Ind.Ct.App.1989).

An illusory coverage analysis requires two steps. First, it must be established that the policy is, in fact, illusory. Second, if it is illusory, the Court must determine if the

---

[10] Burford Printing's counterclaim did not include any allegations of ambiguity or claims to full liability coverage. Rather, its claim focused on its rights as a lessor, which theory, as we have previously noted has been abandoned.

insured had a reasonable expectation that the policy would provide the requested coverage. *Nautilus Ins. Co.*, 2015 WL 4545876, at *6.

Here, Burford Printing argues that the Renewal Policy identifies it as the "building owner," despite the fact that Burford Printing no longer owned the Property during the time period in which the Renewal Policy was effective. Burford Printing thus maintains that the parties intended to provide Burford Printing with full liability coverage regardless of its status as an owner or lessor.

Burford Printing's argument falls well short of establishing that the Renewal Policy was illusory. Burford Printing fails to address either component of the two-part legal analysis required in applying the illusory coverage doctrine, nor does it respond to Westfield's argument that the Policy is not illusory simply because the conditions of the additional insured provision were never met. Burford Printing also fails to acknowledge that the Renewal Policy did afford it property coverage as the mortgage holder of the Property. Thus, argues Westfield, Burford Printing cannot satisfy its burden of showing that it could not have received coverage under any reasonably expected set of circumstances. Burford Printing's briefing leaves these contentions unaddressed, stopping, as we have said, well short of advancing a convincing, sound rationale for a finding in its favor under the illusory coverage doctrine.

## CONCLUSION

Burford Printing's Motion for Summary Judgment [Dkt. 70] is thus **DENIED**, and Westfield's Cross-Motion [Dkt. 76] is **GRANTED**. The parties shall bear their own costs,

respectively. Final judgment shall enter accordingly by separate document. FED. R. CIV. P. 58(A).

    IT IS SO ORDERED.

Date: 6/15/2020

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Frederick D. Emhardt
EMHARDT LAW LLC
fred@emhardtlaw.com

Brent W. Huber
ICE MILLER LLP (Indianapolis)
brent.huber@icemiller.com

Robert Jorczak
ICE MILLER
Louie.Jorczak@icemiller.com

Linda L. Vitone
FISHER MAAS HOWARD LLOYD & WHEELER, P.C.
lvitone@fishermaas.com

Stephen Charles Wheeler
FISHER MAAS HOWARD LLOYD & WHEELER, P.C.
swheeler@fishermaas.com